```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF TENNESSEE
                   EASTERN DIVISION
```
_____

| | |
|---|---|
| JAMES LOVE, | ) |
| Plaintiff, | ) |
| v. | ) No. 17-1204-TMP |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

_____

### ORDER AFFIRMING THE COMMISSIONER'S DECISION
_____

Before the court is plaintiff James Love's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434, 1381-1385. (ECF No. 1.) The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 11.) For the following reasons, the Commissioner's decision is affirmed.

## I.  FINDINGS OF FACT

Love applied for disability insurance benefits and SSI on November 12, 2014, with an alleged onset date of September 17, 2014. (R. 185-88; 189-96.) The claims were denied initially and on reconsideration. (R. 80-101; 126-27.) At Love's request, an Administrative Law Judge ("ALJ") held a hearing and issued a

written decision. (R. 16-34.) In his written decision, the ALJ first found that Love had not engaged in substantial gainful activity since the alleged onset date. (R. 22.) Second, the ALJ determined that Love had the following severe impairments: ulcerative colitis/Crohn's disease; chronic obstructive pulmonary disease ("COPD"); and degenerative disc disease of the lumbar spine. (R. 22.) Third, the ALJ determined Love did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22.) Fourth, the ALJ determined that Love retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to occasional stooping, occasional climbing of ladders, ropes, and scaffolds, frequent climbing of ramps and stairs, frequent kneeling, frequent crouching, and frequent crawling. He must avoid concentrated exposure to dusts, fumes, odors, gases, or poor ventilation. He must avoid concentrated exposure to extreme heat and humidity. He needs easy access to bathroom facilities.

(R. 23.) The ALJ therefore determined that Love could not perform any past relevant work. (R. 28.) Finally, the ALJ determined that, considering Love's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which he could perform. (R. 29.) Thus, the ALJ found that Love was not disabled. (R. 30.) The Social Security Administration's ("SSA") Appeals Council denied Love's request for review, making the ALJ's

decision the final decision of the Commissioner. (R. 1.)

Love filed the instant action on November 1, 2017, seeking reversal or remand of the Commissioner's decision. (ECF No. 1.) Love argues that the ALJ's RFC finding is not supported by substantial evidence. (ECF No. 17 at 8.) Specifically, Love argues that he was disabled because he was diagnosed, on 23 occasions, with active colitis/Crohn's disease, active lumbalgia, and active COPD. (Id. at 9.) Love also argues that the opinions of Dr. Gary McBride and Dr. David Larsen were entitled to greater weight and that the non-examining state agency review doctors' opinions were entitled to no weight. (Id. at 10.) Love thus asserts that the ALJ erred in determining his RFC and requests that this matter be remanded for a new hearing. (Id. at 11.)

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the

Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is

charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is

on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return

to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C. Whether the RFC Determination was Supported by Substantial Evidence**

"[RFC] is defined as 'the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.'" Mokbel-Aljahmi v. Comm'r of Soc. Sec., 732 F. App'x 395, 399 (6th Cir. 2018) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c)). "'In formulating [an RFC], the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions.'" Id. (quoting Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012)); see also 20 C.F.R. § 404.1545(a)(3). In making this determination, the ALJ may consider both objective medical evidence of a severe medical condition, and the credibility of the claimant's subjective

-7-

complaints. See Steagall v. Comm'r of Soc. Sec., 596 F. App'x 377, 381 (6th Cir. 2015); Schmiedebusch v. Comm'r of Soc. Sec., 536 F. App'x 637, 649 (6th Cir. 2013).

First, Love argues that the ALJ erred in determining his RFC because the record evidence establishes several disabling-level conditions. (ECF NO. 17 at 9.) In connection with this argument, Love asserts that the ALJ improperly characterized treatment notes from these examinations as "normal" and improperly evaluated Love's testimony regarding his symptoms. (Id. at 11.) However, substantial evidence supports the ALJ's determination. See Mokbel-Aljahmi, 732 F. App'x at 399. The ALJ observed that, despite being diagnosed with the above-identified conditions, Love's actual treatment notes did not reveal complaints or treatment consistent with disability. (R. 24-25.) While Love raised gastrointestinal complaints as early as 2013 and otherwise complained of abdominal problems, the treatment notes from various doctors, specifically Dr. Larsen, showed improvement. Aside from the gastrointestinal issues, the ALJ observed that Love's treatment records were essentially normal with respect to strength, gait, range of motion, and tenderness. Accordingly, substantial evidence in the record supports the ALJ's conclusion and this court need not consider whether the record could support a decision the other way. See Barker, 40 F.3d at 794. To the extent Love challenges the ALJ's assessment of his credibility, substantial evidence likewise

supports that determination and the ALJ was not required to accept such complaints where they were not corroborated by objective medical records or treatment notes. See Perry v. Comm'r of Soc. Sec., 734 F. App'x 335, 340-41 (6th Cir. 2018).

Next, Love argues that Dr. Larsen's opinion should have been afforded controlling weight. (ECF No. 17 at 10.) A treating physician's opinion is due controlling weight if it is "well-supported by medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); Turk v. Comm'r of Soc. Sec., 647 F. App'x 638, 640 (6th Cir. 2016). "Where an ALJ does not give controlling weight to a treating source opinion, it weighs that opinion in light of the regulations, using the factors in 20 C.F.R. § 404.1527(c)(2)-(6)." Perry, 734 F. App'x at 339. "This does not require an 'exhaustive, step-by-step analysis,' but merely 'good reasons' for the ALJ's weighing of the opinion." Id. (quoting Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 785 (6th Cir. 2017)). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Dugan v. Comm'r of Soc. Sec., 742 F. App'x 897, 902-03 (6th Cir. 2018) (quoting Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013)); see also

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). "A failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Id. at 903 (internal quotations omitted).

Here, the ALJ considered Dr. Larsen's opinion and assigned it little weight. (R. 25-27.) In his assessment, the ALJ noted that Love began treatment with Dr. Larsen in 2016 and visited him multiple times. See Dugan, 742 F. App'x at 903 (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (noting that ALJ should consider length of the treatment relationship and frequency of examination in assessing weight to assign treating physician's opinion). The ALJ also noted that Dr. Larsen's statements regarding Love's restrictions and clinical diagnoses were inconsistent with his own treatment notes and with the totality of the record. See id. (stating ALJ should also consider supportability of the opinion). Specifically, Dr. Larsen noted that Love appeared to have normal functioning in several capacities, including strength, abdominal tenderness, gait, respiratory functioning, range of motion, and joint and muscle pain. (R. 26.) And the ALJ noted that these findings conflicted with other examinations conducted by Dr. Ken Berry, who, in the

course of his original treatment of Love diagnosed ulcerative colitis, prescribed him various medications, and routinely noted that Love was "well-nourished," not in acute distress, and otherwise demonstrated a normal gait, stable and functional standing and walking, normal muscle strength, no nerve deficits, and no sensation abnormalities. See Dugan, 742 F. App'x at 903 (stating ALJ should consider the consistency of the opinion with the record as a whole). The ALJ therefore identified the reasons for discounting Dr. Larsen's opinion and explained how those reasons affected the weight accorded his opinion. See id. The ALJ's decision to afford Dr. Larsen's opinion little weight was thus supported by substantial evidence. See Perry, 734 F. App'x at 339.

Love further argues that the ALJ should have afforded Dr. McBride's opinion substantial weight. (ECF No. 17 at 10.) Dr. McBride performed a one-time consultative examination. (R. 27.) Accordingly, he is properly characterized as a "nontreating source" who has "examined the claimant but does not have, or did not have, an ongoing treatment relationship with [the claimant]." Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007) (internal quotations omitted). Nontreating sources are not afforded the same level of deference as a treating source. See id.; see also Andres v. Comm'r of Soc. Sec., 733 F. App'x 241, 245 (6th Cir. 2018); Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir.

2012). Even so, "as between an examining source and a non-examining source, the examining source will be given more weight." Staymate v. Comm'r of Soc. Sec., 681 F. App'x 462, 467 (6th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(1)). "In addition to this examining relationship, the ALJ may consider 'specialization, consistency, [ ] supportability, ... [and] [o]ther factors which tend to support or contradict the opinion.'" Id. (quoting Gayheart, 710 F.3d at 376); see also 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ properly considered Dr. McBride's opinion. Specifically, the ALJ noted the extent of the examining relationship – a one-time, consultative examination. (R. 27.) The ALJ also noted that this examination includes the only indication in the record of Love leaning over due to back pain and exhibiting an antalgic gait. However, the ALJ determined that these abnormalities appeared to be based on Love's subjective complaints. Furthermore, these abnormalities were inconsistent with the other normal findings noted during the examination, including x-rays of the lumbar spine and other findings noted by Love's treating providers. The ALJ therefore explained his rationale for granting Dr. McBride's opinion little weight. See Andres, 733 F. App'x at 245; Norris, 461 F. App'x at 439; Staymate, 681 F. App'x at 467. Substantial evidence thus supports this decision.

Finally, Love argues that the state agency review doctors should have been afforded no weight because their review occurred before Dr. Larsen's treatment began, and thus did not have the benefit of the complete record. (ECF No. 17 at 10.) An ALJ may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records. Dyer v. Soc. Sec. Admin., 568 F. App'x 422, 428 (6th Cir. 2014). As explained above, the ALJ here properly considered the treating and consultative examiners' opinions and explained his reasons for assigning them little weight. Accordingly, he was entitled to rely on the state agency reviewers. See id.; see also Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004); Brown v. Berryhill, No. 1:15-cv-000462017, WL 3674838, at *9 (M.D. Tenn. Aug. 25, 2017); Overholt v. Astrue, No. 3:07–cv–322, 2008 WL 2645662, at *9 (E.D. Tenn. July 2, 2008). Furthermore, the ALJ discussed his reasons for relying on these opinions, specifically because they were consistent with the generally normal medical examinations over time and accounted for Love's subjective complaints. (R. 27.) That these reviewers did not have the benefit of the entire record, notably Dr. Larsen's treatment records and assessment, is not grounds for remand. The ALJ was entitled to consider this additional evidence himself, which he did. See McGrew v. Comm'r of Soc. Sec., 343 F. App'x 26, 32 (6th Cir. 2009); see also Glasgow v. Comm'r of Soc. Sec., 690 F.

App'x 385, 387 (6th Cir. 2017); Gerrick v. Comm'r of Soc. Sec., No. 16-2664, 2017 WL 5992235, at *2 (6th Cir. Aug. 14, 2017); Myland v. Comm'r of Soc. Sec., No. 17-1592, 2017 WL 5632842, at *2 (6th Cir. Nov. 13, 2017). Accordingly, substantial evidence supports this determination as well.

### III. CONCLUSION

For these reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham  
TU M. PHAM  
United States Magistrate Judge

March 1, 2019  
Date